# EXHIBIT A

BATCH NO: 769
DATE: 1-18-17
PAYMENT: CA / CK / MO
CK/MO #: 11902
AMOUNT: 250.00
PREPARER: CS

Raymond A. Grimes, P.C.
1367 Route 202 North
Neshanic Station, New Jersey 08853
T: 908-371-1066
F: 908-371-1066
Attorney ID #029151988
Attorneys for Plaintiffs, Aaron Nelson, Ashley Nelson, Aaydin Nelson and Nteliseng Nkhela

| | |
|---|---|
| Aaron Nelson, Ashley Nelson, Aaydin Nelson, by his guardian ad litem Aaron Nelson, and Nteliseng Nkhela<br><br>　　　　　　　Plaintiffs<br>vs.<br><br>AvalonBay Communities, Inc. ABC Corporations 1-10, and John Does 1-20,<br><br>　　　　　　　Defendants | Superior Court of New Jersey<br>Somerset County-Law Division<br><br>Docket No.: SOM-L- 61-17<br><br>Complaint-Class Action<br>Jury Trial Demanded |

RECEIVED and FILED
SUPERIOR COURT
JAN 18 2017
SOMERSET COUNTY
DEPUTY CLERK

Plaintiffs Aaron Nelson, Ashley Nelson, Aaydin Nelson and Nteliseng Nkhela ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, allege as follows upon personal knowledge as to themselves, and as to all other matters upon information and belief, and based upon the investigation undertaken by their counsel.

## SUMMARY OF CLAIMS

1.  This is a class action lawsuit against Defendant AvalonBay Communities, Inc. ("AvalonBay" or "Defendant"), ABC Corporations 1-10, and John Does 1-20, brought by Plaintiffs on behalf of themselves and all other similarly situated tenants and residents ("Class Members") that were displaced or otherwise affected by a massive fire that occurred on Wednesday, January 21, 2015 at the Avalon at Edgewater apartment community

1

(the "Avalon"), a property constructed, owned and operated by Defendant and located in Edgewater, New Jersey.

2.  The Avalon was a 408 unit luxury apartment complex that burned to the ground as a result of the fire. According to news reports, the fire was an "accident" caused by maintenance workers who were using a blowtorch while attempting to perform plumbing work in a wall.[1] The fire spread rapidly, and almost instantaneously had the effect of displacing over 1,000 residents of the Avalon, as well as other residents of surrounding buildings.

3.  Avalon's property managers initially informed tenants-some two hours after the fire had first begun - that there was a "minor fire" within the complex. As demonstrated by the image below, however, this was in fact a devastating fire that, at its peak, emitted smoke that was visible from across the Hudson River in Manhattan.

---

[1] http://www.nytimes.com/2015/01/23/nyregion/edgewater-fire-leaves-homeless-tenants-distraughthtml (last visited Jan. 23, 2015).



4. While there were, fortunately, no fatalities reported from the fire, the aftermath has been devastating to residents who are now displaced. The devastation wrought by this tragedy has claimed the lives of many pets and destroyed other irreplaceable items.

5. This is not the first fire to occur at the Avalon nor, as discussed below, the first fire or fire related incident to occur at one of the properties owned or operated by AvalonBay. According to a recent *New York Times* article, there was a fire at the same Avalon location fifteen years ago. before construction had been completed, "in what fire officials here described

then as the worst blaze they had seen in decades." The developers reportedly paid to settle lawsuits associated with that fire, and then "got back to work with the same lightweight wood construction they had been using — faster to build with, but also more flammable."[3]

6. It has also been reported that the Avalon apartments did not have sprinklers in the attics or concealed spaces, and that the Avalon was made of lightweight wood construction that may have accelerated the spread of the fire.

7. Plaintiffs bring this case on behalf of themselves and all those similarly situated to recover for all property damages proximately caused by Defendant's conduct. This includes, without limitation, the loss of use or deprivation of property; the reimbursement of any rent payments made for time during which the Avalon was uninhabitable; the recovery for any improvements made by any tenants; and other expenses incurred as a direct result of the fire, such as food, clothing, housing, relocation, transportation, medicine, medical treatment and such other items as are necessary to continue one's activities of daily living.

## THE PARTIES

### The Plaintiffs

8. Plaintiffs Aaron Nelson, Ashley Nelson and Aaydin Nelson were residents of Edgewater, New Jersey and were residents of the Avalon at Edgewater until they were displaced by the January 21 fire. Plaintiffs lost all personal belongings that were in their apartment at the time of the fire, including their dog. As a result of Defendant's conduct, they have been injured.

9. Plaintiff Nteliseng Nkhela was a resident of Edgewater, New Jersey and was a resident of the Avalon at Edgewater until she was displaced by the January 21 fire. Plaintiff Nkhela lost all of her personal belongings that were in her apartment at the time of the fire.

---

[2] Id.
[3] Id.

As a result of Defendant's conduct, she has been injured.

10. Defendant AvalonBay is a Maryland corporation that, according to its most recent Form 10-K filed with the Securities and Exchange Commission, operates as a real estate investment trust. It can be served at its principal place of business located at Ballston Tower, 671 N. Glebe Rd, Suite 800, Arlington, Virginia 22203. Defendant states that it engages "in the development, redevelopment, acquisition, ownership and operation of multifamily communities" throughout the United States. AvalonBay claims to have direct or indirect ownership interests in 274 apartment communities across the country containing a total of 82,333 apartments. It has issued securities that are publicly traded on the New York Stock Exchange under the ticker symbol "AVB." For the year ended December 31, 2013, AvalonBay reported $1.4 billion in revenue and $352 million in net income.

11. Defendants ABC Corporations 1-10 are currently unknown entities that may be responsible for and/or may have participated in the improper activities of Defendant AvalonBay and therefore the damages sustained by Plaintiffs and members of the Class.

12. Defendants John Does 1-20 are currently unknown individuals who may be responsible for and/or may have participated in the improper activities of Defendant AvalonBay and therefore the damages sustained by Plaintiffs and members of the Class.

JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action. This Court also has personal jurisdiction over Defendant because it owns, operates, and/or controls business operations, and/or does extensive business with others, throughout New Jersey.

5

## FACTUAL ALLEGATIONS

14.     The Avalon was constructed as a two building, four-story luxury apartment. Rents ranged from $2,100 to S3,195 per month. Images of the Avalon before the fire appear below:



15. The fire at the Avalon was first reported at 4:22 p.m. on Wednesday, January 21, a time when many tenants were still at work. It has been reported that the fire was caused by maintenance workers using a blowtorch while attempting to repair a plumbing issue within a unit.

16. At approximately 6:25 p.m., two hours after the fire was first reported, a mass email was sent to tenants of the Avalon advising them that there was a "minor fire" at the complex. The text of that email stated the following:

> Dear Residents,
>
> Due to a minor fire in the Russel Building, the Fire Department mandated to evacuate the Russel building until further notice.
>
> The Elementary School Eleanor Van Gelder across the street is open for temporary shelter, and shuttle buses to the community center are provided by the entrance to the school.
>
> We will try keeping everyone posted as we receive new information.
>
> Sincerely,
>
> Team at Avalon at Edgewater

18. Other reports have stated that building employees were telling residents at the time that the fire did not seem serious.

19. The fire spread rapidly, and eventually led to the closure of several nearby streets. The flames produced a wall of smoke so thick that it repeatedly forced back the firefighters who came from 35 surrounding towns to assist with fighting the blaze. Approximately 500 firefighters and other emergency personnel responded to the fire. These first responders were still working well past 11 p.m. on Wednesday trying to extinguish the fire.

20. At an 11:15 p.m. news conference that evening, Mayor Michael McPartland declared a state of emergency and announced that schools would be closed the following day. He

also stated that approximately 500 residents were permanently displaced, and approximately 520 more were temporarily displaced from surrounding buildings.

21. Images of the building while it was on fire are below and on the next page:





<mark>
</mark>
<mark>
</mark>
<mark>
</mark>



22. James Tedesco III. the newly elected county executive and former fire chief in Paramus, reportedly made the following remarks:

> This is, if not the worst, one of the top two in my 39 years of firefighting. And what makes this different is the great loss of people's homes, and they have nowhere to go. When you lose a downtown or a boardwalk or places like that, yes it's impacting, but people can go home. We'll have 1,000 people out of their homes tonight.

23. Edgewater's current fire chief Tom Jacobson. said at a news conference that the fire swept through the complex quickly because of its lightweight wood construction and truss-style roof. "If it was made out of concrete and cinder block, we wouldn't have this problem." he said. "But it's lightweight construction with sprinklers, and this is the problem you face with this type of construction."

457890.1

24. In describing the spread of the blaze, fire protection engineer Robert Malanga told a local CBS News affiliate that "[t]he change in conditions was radical...There very well may have been a failure of a sprinkler system, or again, a fire burning in an unoccupied area."

25. Assemblyman and Chair of New Jersey's Fire Safety Commission John Wisniewski said he was told the building had "a system designed to give people time to get out but not necessarily preserve the structure. We have to ask the question, should it have been a more robust system?"

26. For its part, AvalonBay's chief construction officer, Michael Feigin, has said that the construction was in accordance with the fire and safety codes, the purpose of which he described as "not to prevent the building from burning down, but rather to ensure that there is sufficient time and opportunity for all occupants to exit safely in the event of a fire." He went on to state that "[a]s a company, the safety and well-being of our residents is a priority in the design, construction and operation of our communities."

27. While there were no deaths as a result of the fire, it has been reported that two residents and two firefighters had to be treated for minor injuries. Firefighters also reportedly had to make three rescues upon their arrival. Tragically, many pets in the complex died in the fire.

28. Residents of the Avalon were prevented from entering the building to attempt to salvage their belongings or save their pets. They were later evacuated to a nearby school and a local community center.

29. When the smoke cleared, over 200 of the Avalon's 408 units had been reduced to rubble.

30. Many of the affected residents have taken to social media to share their experiences with the recent fire - as well as past problems with Avalon's on-site management. One such series of posting from the Yelp website appear below:

- This complex became an epic inferno that's completely destroyed everything and left 400 people/150 families homeless, staff without jobs, half the city without power, and they even had to shut public schools the day after. This Hell on earth all thanks to Avalon Bay's poor quality construction when this was built with slapdash materials for a quick buck by greedy developers. The first one even burned down so they rebuilt it- obviously no better! Insane. Owners of AvalonBay should be arrested or at minimum sued out of the business. They must be held accountable.

- I am sorry for the tenants who have to go through this tragedy today but this was going to happen soon or later....we had about 15 full blown false fire alarms during the 1 year of residency here. The company who manages the management of this complex has some serious neglect issues.

- I am a former (dissatisfied) tenant and I watched this fire unfold from the Trader Joe's shopping center across the street. I always knew this building was cheaply constructed, but to see it go up in flames so quickly was still alarming. When I lived there, we had fire alarms go off at least three times a week. It got to the point where I wouldn't even leave my apartment because I knew it would be a false alarm. Unfortunately, that should never be the case. I'm also not sure what the sprinklers were installed for if they didn't even work properly to contain the fire.

http://www.yelp.com/biz/avalon-at-edgewater-edgewater (last visited Jan. 23, 2015).

31. As noted above, there was another fire at the same complex - then known as Avalon River Mews - in 2000 when it was initially being built. This fire also destroyed nine homes and twelve cars, and damaged several other homes. That fire was related to a ruptured gas line in the center of the complex. Similar to the most recent fire, this event also forced the evacuation of dozens of nearby residents, including patients at a nearby nursing home.

32. In 2012, there was another fire at another one of Defendant's properties, the Avalon Garden City complex in East Garden City, Long Island, while it was still under construction. That reportedly resulted in the complete destruction of its roof.

33. Residents in some locations where the construction of a new Avalon facility is contemplated have voiced their opposition by citing to the company's past history of fires and fire-related violations at other locations. For example, a flyer titled "AVALONBAY'S TROUBLING FIRE SAFETY TIMELINE" states that "[before AvalonBay builds in your neighborhood, you might want to read and consider this timeline of the company's disturbing fire safety record.'[10] The flyer then goes on to cite specific examples of fire incidents including, without limitation, the following:

- A fine by the Occupational Safety and Health Administration ("OSHA") for "lax fire protection" at an AvalonBay construction project in Newton, Massachusetts.

- Fines by the New York City Department of Buildings for violations of the fire code.

- An OSHA finding that AvalonBay had just one fire extinguisher at a four story building in Norwalk, Connecticut, and the absence of any fire extinguishers at another project in Elmsford, New York.

---

* http://7www.eastonmass.com.'forum/uploaded/nvsvvcdc 20141121113113 AvalonBav-Fire-Record.pdf (last visited Jan. 23, 2015).

12

- The destruction of an apartment complex in Quincy, Massachusetts built by AvalonBay, which was later determined to have been related to faulty construction that allowed the fire to spread quickly.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action pursuant to Rule 4:32 of the New Jersey Court Rules on behalf of themselves and a class of similarly situated tenants and residents that were displaced or otherwise affected by the January 21 fire at the Avalon. This class includes, without limitation, all nearby residents and property owners - whether living at the Avalon or in close proximity thereto - who have suffered economic injuries or property damages as a result of the fire. This action has been brought and may be properly maintained as a class action pursuant to Rule 4:32-1 (a) as Plaintiffs and the Class satisfy the numerosity, commonality, typicality and adequacy requirements for maintaining a class action.

35. The number of members in the Class is so numerous as to render joinder impracticable. As noted above, there are approximately 1,000 tenants who have been displaced from the fire, and many more nearby residents who have been affected.

36. Joinder of all of these individuals is impracticable because of the large number of Class members.

38. Common questions of law and fact exist as to all members of the Class, in that they were each injured at the same time by the same fire and by the same alleged misconduct by Defendant.

39. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs, like all members of the Class, suffered economic injuries from the fire.

40. Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are adverse to, or in conflict with, the interests of the members of the Class.

41. Plaintiffs have retained counsel with substantial experience and success in class action litigation. Plaintiffs* counsel have the resources, expertise and experience to successfully prosecute this action against Defendant, and intend to prosecute this action vigorously. Plaintiffs know of no conflicts among members of the Class or between counsel and members of the Class.

42. Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class (see Rule 4:32-1 (b)(3)). These common questions of law and fact include, without limitation, the common and predominant questions of whether the Plaintiffs and the Class have been injured as a result of the Defendant's conduct; whether Defendant was negligent; and whether Plaintiffs and members of the Class are entitled to damages (and, if so, in what amount).

43. A class action is the superior method for the fair and efficient adjudication of this controversy (see Rule 4:32-1 (b)(3)), since joinder of all of the individual members of the Class is impracticable given the large number of Class Members. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudicating thousands of individual cases would be enormous.

44. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the maintenance of this action as a class action in this Court presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

## VIOLATIONS ALLEGED

### COUNT I
### NEGLIGENCE

45. Plaintiffs incorporate by reference all proceeding paragraphs of this complaint the same as if fully set forth herein.

46. Defendants owed a duty of care to Plaintiffs and Class Members. At all times material herein, Defendants undertook the supervision of the construction, maintenance, and operation of the Avalon, and established plans, recommendations, designs, and specifications for the performance of the construction and maintenance work. Defendants owed a duty to perform the construction and maintenance work in a safe, competent and workmanlike manner in order to avoid damage to property or injury to persons, and to ensure that any persons to whom it delegated these responsibilities did the same.

47. Defendants breached its duty of care to Plaintiffs and Class Members.

48. Defendant's breach was the direct and proximate cause of injuries to Plaintiffs and Class Members.

49. Defendants knew or should have known of the risk of fire during construction and for maintenance, and knew or should have known that the risk was increased when using lightweight wood construction and/or in allowing a blowtorch to be used in close proximity to these flammable materials.

### COUNT II PRIVATE
### NUISANCE

50. Plaintiffs incorporate by reference all proceeding paragraphs of this complaint the same as if fully set forth herein.

51. Defendant's actions and failures to act constitute an intentional and unreasonable invasion of Plaintiffs' and Class Members' interest in the private use and enjoyment of their

15

property because Defendants knew or were substantially certain that a fire was likely to result from its conduct. Defendant's conduct is also unreasonable because the gravity of the potential harm resulting from the fire outweighed any conceivable utility of Defendant's conduct.

52. Defendant's conduct was negligent or reckless - particularly in light of its past track record with fire incidents - and has significantly interfered with Plaintiffs' and Class Members* interest in the private use and enjoyment of their property.

53. Defendants also knew its conduct created an abnormally dangerous condition that unreasonably exposed Plaintiffs and the Class Members to increased risk of fires.

54. As a result of Defendant's conduct, Plaintiffs and the Class have been injured.

## COUNT III PUBLIC NUISANCE

55. Plaintiffs incorporate by reference all proceeding paragraphs of this complaint the same as if fully set forth herein.

56. Defendant's conduct constitutes an unreasonable interference with Plaintiffs' and Class Members' right to the use and enjoyment of their personal and real property.

57. Defendant's conduct constitutes a significant interference with the public safety by failing to protect Plaintiffs and the Class from the obvious risk of fires. Defendants knew or were substantially certain that its conduct could lead to a widespread, devastating fire and failed to protect the public from such a risk.

58. Plaintiffs and the Class have been harmed as a result of Defendant's conduct as alleged herein. Plaintiffs and the Class have also suffered harm that is unique from other members of the public in that they have been displaced and lost other personal or real property as a direct and proximate result of Defendant's conduct.

59. As a result of Defendant's conduct, Plaintiffs and the Class have been injured.

## JURY TRIAL DEMANDED

Plaintiffs and the Class demand a trial by jury of all issues so triable.

**PRAYER FOR RELIEF** WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 4:32-1 (a) and (b)(3), and issue an order certifying the Class as defined above;

B. Appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C. Award all actual, general, special, incidental, statutory, punitive, treble and consequential damages to which Plaintiffs and Class members are entitled;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Award reasonable attorneys' fees and costs; and

F. Grant such further relief as this Court deems equitable and just.

                                  Raymond A. Grimes, PC
                                  1367 Route 202, N
                                  Neshanic Station, New Jersey 08853

                                  _____
                                  Raymond A. Grimes, Esq.

Dated: January 17, 2017

## CERTIFICATION PURSUANT TO RULE 4:5

Plaintiffs, by their attorneys, hereby certify that the matter in controversy is not the subject of any other pending or contemplated judicial or arbitration proceeding. Plaintiffs are not currently aware of any other parties that should be joined in this action.

_____
Raymond A. Grimes, Esq.