NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON NELSON, ASHLEY NELSON, AAYDIN NELSON, BY HIS GUARDIAN AD LITEM AARON NELSON, AND NTELISENG NKHELA,<br><br>Plaintiffs,<br><br>v.<br><br>AVALONBAY COMMUNITIES, INC., ABC CORPORATIONS 1-10 AND JOHN DOES 1-20,<br><br>Defendants. | Civil Action No. 17-0778 (JLL)<br><br>OPINION |

**LINARES,** Chief District Judge

This matter comes before the Court by way of Aaron Nelson, Ashley Nelson, Aaydin Nelson, and Nteliseng Nkhela's ("Plaintiffs") motion to "transfer" this matter to state court.[1] (ECF No. 18) ("Motion"). Defendant AvalonBay Communities, Inc. has filed an opposition, (ECF No. 19), and Plaintiffs have filed a reply, (ECF No. 20). The Court has read the submissions of the parties and considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Plaintiffs' Motion.

## I. BACKGROUND

As both the Court and the parties are familiar with the facts of this case, the Court sets out only the facts that are relevant to Plaintiffs' Motion. Plaintiffs are actors in The Lion King on Broadway, (ECF No. 18-1 ¶ 13), who resided in the Avalon at Edgewater ("the Avalon") apartment complex, (ECF No. 1-1 ¶ 1). Defendant built, owned, and managed the Avalon. (*Id.* ¶

---

[1] The Court will construe Plaintiffs' motion to transfer as a motion to remand the matter to state court.

1

46). On January 21, 2015, the Avalon burned down in a fire. (*Id.* ¶¶ 15–22). The Nelson Plaintiffs lost their apartment, their personal belongings, and their dog. (*Id.* ¶ 8). Plaintiff Nkhela lost her apartment and all of her personal belongings as well. (*Id.* ¶ 9).

As a result of the fire, Plaintiffs filed a putative class action against Defendant in the New Jersey Superior Court, Law Division, Somerset County. (ECF No. 1-1). On February 6, 2017, Defendant removed this case to this Court. (ECF No. 1). At the time of removal, this Court was handling a parallel class action that involved the same fire at the same property. *See generally DeMarco v. AvalonBay Communities, Inc.*, No. 15-628 (D.N.J.) ("the DeMarco Action"). On March 13, 2017, this Court approved the settlement of the DeMarco Action ("the DeMarco Settlement"). (The DeMarco Action, ECF No. 131). As part of its Opinion and Order approving the DeMarco Settlement, this Court entered a preliminary injunction "barring and enjoining Plaintiffs and all Settlement Class Members, to the extent permissible by existing law, from bringing, filing, commencing, prosecuting (or further prosecuting), maintaining, intervening in, participating in, or receiving any benefits from any other lawsuit, arbitration or administrative, regulatory or other proceeding in law" that arose from the Avalon fire. (The DeMarco Action, ECF No. 132 ¶ 17). The class included "[a]ll residents and occupants of the Russell Building at Avalon at Edgewater as identified on the operative lease agreements as of January 21, 2015, whose property in a Russell Building apartment or storage unit was destroyed by The Fire." (*Id.* ¶ 2(f)).

On March 17, 2017, Defendant filed a letter in this action, informing the Court and Plaintiffs' attorney, of the settlement of the DeMarco Action. (ECF No. 14). The letter maintained that Plaintiffs would have the opportunity to opt out of the class once they received notice of the settlement. (*Id.*). On March 21, 2017, Magistrate Judge Joseph A. Dickson held an

in-person status conference to discuss the future of this matter in light of the settlement in the DeMarco Action. It is undisputed that the attorneys for both parties were present at this status conference. (ECF No. 18-1 ¶ 5; ECF No. 19 at 2). It is also undisputed that Plaintiffs' attorney informed Magistrate Judge Dickson that Plaintiffs intended to opt out of the settlement class. (ECF No. 18-1 ¶ 7; ECF No. 19 at 2).

Pursuant to this Court's order preliminarily approving the settlement in the DeMarco Action, Plaintiffs had 45 days from the date of the settlement notice, or until May 17, 2017 to file a request for exclusion from the settlement. (The DeMarco Action, ECF No. 132 ¶ 9). Plaintiffs did not file a request for exclusion. On July 17, 2017, Magistrate Judge Dickson requested a status update from Plaintiffs. (ECF No. 17). While Plaintiffs' attorney claims he filed the requested status update with the Court and served it on Mr. Lapinksi, co-lead counsel for Plaintiffs in the DeMarco Action, (ECF No. 20 ¶ 10), there is no indication on the Court's docket that Plaintiffs' attorney filed any status update. The deadline to submit a claim under the settlement agreement was September 21, 2017. (ECF No. 19-1 ¶ 20). Plaintiffs have also missed this deadline. Plaintiffs now move to opt out of the class and remand the case to state court.

## II. ANALYSIS

The essence of Plaintiffs' argument is that neither Plaintiffs, nor their attorney, ever received notice or documentation regarding the DeMarco Settlement, and that there would be no prejudice in allowing Plaintiffs to opt out of the class and remand the case to state court. (ECF No. 18-1 ¶¶ 12–17). Defendant claims that Plaintiffs have not shown that the failure to opt out of the class was due to excusable neglect, and that even if this Court permitted Plaintiffs to opt out, remand is not available in this case. (ECF No. 19 at 4–11).

In determining whether Plaintiffs' untimely request to opt out of the class deserves the benefit of excusable neglect, the Court considers: "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." *In re Orthopedic Bone Screw Prods. Liab. Litig. ("Bone Screw")*, 246 F.3d 315, 322–23 (3d Cir. 2001) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). When analyzing excusable neglect "clients must be held accountable for acts and omissions of their attorneys." *In re Diet Drugs (Phentermine/Fenluramine/Dexfenfluramine) Prods. Liability Litig.*, 92 F. App'x 890, 893 (3d Cir. 2004) (quoting *Pioneer Inv. Servs.*, 507 U.S. at 396). The clients need not have done all they reasonably could to police the conduct of the attorney; instead, the inquiry focuses on "whether the neglect of [the clients] *and their counsel* was excusable." *Id.* (quoting *Pioneer Inv. Servs.*, 507 U.S. at 397).

Considering the first factor, permitting Plaintiffs to opt out of the class would prejudice Defendant. If Plaintiffs were to opt out, they could sue for the full spectrum of damages available under the law, whereas under the DeMarco Settlement, Plaintiffs' recovery would be determined by a claims adjuster and limited to recovery of the market value of household items, as well as out-of-pocket and relocation expenses, (ECF No. 19-4 at 5-7). For example, the claims adjuster does not take into account the sentimental value of lost items, and values deceased pets at "replacement cost." (*Id.* at 6). Thus, Defendant would lose the benefit of the DeMarco Settlement. *See In re Diet Drugs*, 92 F. App'x at 893–94 (finding that the defendant would be prejudiced by allowing a plaintiff to opt out and thus subject the defendant to "significantly greater potential damages").

4

With respect to the second factor, Plaintiffs filed the instant motion on September 28, 2017. (ECF No. 18). The deadline to opt out of the class was May 17, 2017. (ECF No. 19-1 ¶ 8). The Court does not find a delay of four months to be significant. *See Bone Screw*, 246 F.3d at 324–25 (finding delay of seven months to be insignificant). Plaintiffs state that the reason for the delay in opting out was that neither Plaintiff nor Plaintiffs' attorney had notice of the settlement. (ECF No. 18-1 at 12–15). Plaintiffs allege that they are constantly traveling because of their job and are unable to check their mail on any kind of regular basis. (ECF No. 18-1 at ¶ 13). Furthermore, Plaintiffs' attorney claims that he never received "any documentation from defense counsel, class counsel or any other party notifying [him] of the specific terms and conditions OF ANY SETTELEMENT nor the requirement of any writing to be submitted to any party whatsoever to opt out of the class." (*Id.* ¶ 12). It is undisputed, however, that Plaintiffs' attorney was present at the March 21, 2017 status conference where the parties discussed the impending settlement. (ECF No. 18-1 ¶ 5; ECF No. 19 at 2). While at the conference, Plaintiffs' attorney specifically informed Magistrate Judge Dickson of his clients' intent to opt out of the class. (ECF No. 18-1 ¶ 7; ECF No. 19 at 2).

The timely filing of an opt out in this case was "well within the control of [Plaintiffs'] counsel." *In re Diet Drugs*, 92 F. App'x at 894. Plaintiffs' counsel claims he was diligently monitoring the docket in the instant case, and that there were no electronic filings giving notice of the DeMarco Settlement. (ECF No. 20 ¶¶ 4, 7–8, 11–12). While it is true that there is nothing on this docket specifically giving notice of the DeMarco Settlement, there is a March 17, 2017 letter from Defendant's counsel informing Magistrate Judge Dickson and Plaintiffs' counsel of this Court's preliminary approval of the DeMarco Settlement and providing the docket number for the DeMarco Action. (ECF No. 14). It would have required no great effort for Plaintiffs'

counsel to monitor the DeMarco docket in addition to this docket. *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 329 (3d Cir. 2012) ("[A] reasonably competent attorney who did not personally receive or otherwise look at ECF notices would have to set up some sort of additional method of keeping track of filings, especially those filings submitted under her own ECF account as well as critical filings like a notice of appeal."); *Longo v. First Nat'l Mortg. Sources*, No. 07-4372(MLC), 2009 WL 313334, at *2 (D.N.J. Feb. 6, 2009) (noting that counsel has an affirmative duty to monitor the docket); *cf. U.S. v. Joyce*, 257 F. App'x 501, 505 (3d Cir. 2007) (arguing that it would have been reasonable for counsel to monitor the dockets of jurisdictions where they knew related matters were likely to proceed). As to Plaintiffs' attorneys' contention that he never received notice of the settlement by mail, "[l]ack of notice to counsel . . . cannot constitute a basis for finding excusable neglect." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 240 (D.N.J. 1997) ("Rule 23 and due process do not require or imply that counsel of class members pursuing individual actions are entitled to notice of the opt out deadline.")

Finally, the Court assesses whether Plaintiffs' have acted in good faith. Defendant has not alleged any bad faith on the part of Plaintiffs or their counsel. Given Plaintiffs' counsels' gross oversight in failing to meet the opt out deadline, the Court determines that the balance of the excusable neglect factors set out in *Pioneer* indicate that Plaintiffs should not be allowed to opt out of the class.[2]

Barring Plaintiffs from opting out of the class does not mean that they are without remedy, however. In *Bone Screw*, the Third Circuit addressed the excusable neglect factors in

---

[2] Because the Court finds that Plaintiffs cannot opt out of the settlement class, it need not address the portion of Plaintiffs' motion requesting remand to state court. In any event, Defendant is correct that Plaintiffs' motion for remand is not timely. (ECF No. 19 at 11).

the context of the plaintiff's request to file a claim as part of the settlement class after the claim deadline had passed. 246 F.3d at 320–21. Here, allowing Plaintiffs to file a claim in the DeMarco Settlement changes the analysis under the *Pioneer* prongs. Permitting Plaintiffs to file a claim as part of the settlement would be an expected liability of administering the settlement fund and Defendant's liability under the settlement agreement is fairly limited in scope. For example, out-of-pocket and relocation expenses are capped on a per unit basis, and Defendant's uncapped liability applies only to the market value of the basic household items in Plaintiffs' apartment at the time of the fire. (The DeMarco Action, ECF No. 219-3 at 5–7). Thus, the prejudice to Defendant by allowing Plaintiffs to file a late claim is substantially less than the prejudice of allowing Plaintiffs to opt out. In *Bone Screw*, the Third Circuit noted that the prejudice to the defendant by allowing the plaintiff to file a delayed claim would be "the loss of a windfall" and thus defendant would "suffer no prejudice at all." 246 F.3d at 324 (citations omitted). While the Court is aware that the defendant's liability in *Bone Screw* under the settlement agreement was capped, the scope of the liability of Defendant here is unlikely to be so large that it justifies granting it a windfall by preventing Plaintiffs from filing a delayed claim.

Furthermore, the Court finds it pertinent that Plaintiffs are frequently away from their home due to their jobs as actors in the Lion King on Broadway. Defendant notes that it reached 296 of the 299 class members by mail or by e-mail. (The DeMarco Action, ECF No. 219-2 at 5). However, if Plaintiffs were not home to receive notice by mail, there was no constructive notice to inform them of the deadlines to opt out or file a claim. Nor did Plaintiffs receive information from their attorney, who failed to take basic steps to monitor the settlement process. Plaintiffs are thus put in the unenviable position of being penalized by virtue of the nature of their profession, or, in the alternative, by the missteps of their attorney. The Court does not believe

Plaintiffs should suffer either injustice. *See Bone Screw*, 246 F.3d at 327–28 (finding excusable neglect where the claimant was not aware of the filing deadline and the only constructive notice was in a small ad in a newspaper he did not receive); *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 197 (3d Cir. 2000) (excusing late filings of several claimants where those claimants did not receive notice). As the excusable neglect analysis is an "equitable inquiry," this Court exercises its discretion in allowing Plaintiffs to file a claim in the DeMarco Settlement. *Ragguette*, 691 F.3d at 324.

### III. CONCLUSION

For the reasons stated above, the Court denies Plaintiffs' motion to opt out of the class and remand the case to state court, but permits Plaintiffs to file a delayed claim as part of the settlement class. An appropriate Order accompanies this Opinion.

DATED: December 13, 2017

JOSE L. LINARES
Chief Judge, United States District Court