NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON NELSON, ASHLEY NELSON, AAYDIN NELSON, BY HIS GUARDIAN AD LITEM AARON NELSON, AND NTELISENG NKHELA,<br><br>Plaintiffs,<br><br>v.<br><br>AVALONBAY COMMUNITIES, INC., ABC CORPORATIONS 1-10 AND JOHN DOES 1-20,<br><br>Defendants. | Civil Action No. 17-0778 (JLL)<br><br>OPINION |

**LINARES,** Chief District Judge

This matter comes before the Court by way of Defendant AvalonBay Communities, Inc.'s Motion for Reconsideration. (ECF No. 23). Plaintiffs Aaron Nelson, Ashley Nelson, Aaydin Nelson, and Nteliseng Nkhela have filed opposition, (ECF No. 24), and Defendant has filed a reply, (ECF No. 25). The Court has read the submissions of the parties and considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court denies Defendant's Motion.

## I. BACKGROUND

The Court hereby incorporates the factual background as set forth in its December 13, 2017 Opinion. (ECF No. 21 at 1–3). Defendant now asks the Court to reconsider its decision in that December 13, 2017 Opinion, in which it denied Plaintiffs the opportunity to opt out of the class action, but permitted them leave to file an out-of-time claim as part of the class through the class action settlement claims process.

1

## II. LEGAL STANDARD

Local Civil Rule 7.1(i) governs motions for reconsideration in this District. It requires a movant to set forth "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L.Civ.R. 7.1(i). To prevail on a motion for reconsideration, the movant must show at least one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

The third prong requires "dispositive factual matters or controlling decisions of law" that were "brought to the court's attention but not considered." *Mason v. Sebelius*, Civil No. 11-2370 (JBS/KMW), 2012 WL 3133801, at *2 (D.N.J. July 31, 2012) (quoting *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 353 (D.N.J. 2001)). A motion for reconsideration cannot be used merely to relitigate old matters or to present evidence that was already available to the Court during its initial consideration. *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996) (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1). Furthermore, "[t]he fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." *Morton v. Fauver*, Civil No. 97-5127 (RBK/JS), 2011 WL 2975532, at *3 (D.N.J. July 21, 2011) (citing *Ashton v. AT&T Corp.*, Civil Action No. 03-CV-3158 (DMC), 2006 U.S. Dist. LEXIS 4787, at *4–5 (D.N.J. Feb. 2, 2006)).

In other words, reconsideration is not warranted where "(1) the movant simply repeats the cases and arguments previously analyzed by the court; or (2) the movant has filed the motion merely to disagree with or relitigate the court's initial decision." *CPS MedManagement LLC v.*

*Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 167–68 (D.N.J. 2013) (internal citations and quotations omitted). A motion for reconsideration is generally futile "[u]nless a court has truly failed to consider pertinent authorities or evidence that could not with reasonable diligence have been presented earlier." *Id.* at 168.

### III. ANALYSIS

As the Court noted in its December 13, 2017 Opinion, the excusable neglect analysis is an "equitable inquiry" and is left to the Court's discretion. (ECF No. 21 at 8) (citing *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 324 (3d Cir. 2012)). In making such an equitable determination, the Court takes "account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Nevertheless, Defendant argues that reconsideration is proper for four reasons: (1) In *In re Orthopedic Bone Screw Products Liability Litigation ("Bone Screw")*, 246 F.3d 315, 322–23 (3d Cir. 2001), the Court permitted the filing of a late claim of a class member who actually sought participation in the class, whereas here, Plaintiffs requested to opt out of the class; (2) the prejudice to the defendant in *Bone Screw* was substantially less because liability under the settlement agreement was capped; (3) the Court erred in basing its decision on Plaintiffs' attorney's assertion that Plaintiffs are frequently away from their homes due to their jobs; and (4) AvalonBay should not be prejudiced by adhering to the notice program approved by this Court. (ECF No. 23-1 at 8–12). The Court will address Defendant's concerns in turn.

#### A. Whether the Facts in *Bone Screw* Are Sufficiently Distinguishable to Warrant Reconsideration

As explained in its December 13, 2017 Opinion, the Court considered four factors in determining whether Plaintiffs are deserving of excusable neglect: "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the

3

reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." (ECF No. 21 at 4) (quoting *Bone Screw*, 246 F.3d at 322–23). The Court was well aware of the fact that Plaintiffs requested to opt out of the class while *Bone Screw* concerned a class member seeking to file a late claim in a class in which he actively sought participation. In fact, in its December 13, 2017 Opinion, the Court performed two separate analyses of the four excusable neglect factors: one concerning how those factors would apply were the Court to allow Plaintiffs to untimely opt out of the class, and the other concerning how those factors would apply were the Court to allow Plaintiffs to file a late claim. (ECF No. 21 at 4–8). The Court looked to *Bone Screw* precisely because the analysis in that case concerned relief that this Court considered equitable given the totality of the circumstances here. As such, the Court clearly considered the differences between the Plaintiffs here and in *Bone Screw*, and there are no "dispositive factual matters or controlling decisions of law" that were "brought to the court's attention but not considered." *Mason*, 2012 WL 3133801, at *2 (quoting *P. Schoenfeld Asset Mgmt. LLC*, 161 F. Supp. 2d at 353).

As to Defendant's argument that the Court did not adequately consider that the defendant's liability under the settlement agreement in *Bone Screw* was uncapped, while AvalonBay's liability here is uncapped, Defendant again overlooked the Court's analysis of precisely this issue. In its December 13, 2017 Opinion, the Court wrote:

> Permitting Plaintiffs to file a claim as part of the settlement would be an expected liability of administering the settlement fund and Defendant's liability under the settlement agreement is fairly limited in scope. For example, out-of-pocket and relocation expenses are capped on a per unit basis, and Defendant's uncapped liability applies only to the market value of the basic household items in Plaintiffs' apartment at the time of the fire. (The DeMarco Action, ECF No. 219-3 at 5–7). Thus, the prejudice to Defendant by allowing Plaintiffs to file a late claim is substantially less than the prejudice of allowing Plaintiffs to opt out. In *Bone Screw*, the Third Circuit noted that the prejudice to the defendant by allowing the

4

plaintiff to file a delayed claim would be "the loss of a windfall" and thus defendant would "suffer no prejudice at all." 246 F.3d at 324 (citations omitted).

(ECF No. 21 at 7). The Court sees no error in its prior reasoning. While it is true, as Defendant points out, that the Court and AvalonBay do not yet know the precise amount of the claims to be filed by Plaintiffs, (ECF No. 23-1 at 9), Plaintiffs have lost their homes and all of their belongings in a catastrophic fire at Defendant's property. In light of the parameters limiting the recovery of class members under the settlement claims process, the Court does not believe that such claims will unfairly prejudice Defendant under the circumstances. As such, the Court does not believe that it improperly applied *Bone Screw* to the facts of this case so as to warrant granting Defendant's Motion for Reconsideration.

**B. Whether the Court's Reliance on Plaintiffs' Attorney's Assertions and Its Decision to Allow Plaintiffs to File a Late Claim in Spite of Defendant's Adherence to the Notice Procedure in the Settlement Agreement Warrant Reconsideration**

As an initial matter, Defendant is correct that the Court overlooked the fact that notice of the final settlement was served on Plaintiffs by electronic mail. (ECF No. 23-1 at 9–10). The question is thus whether this fact changes the Court's decision as to Plaintiffs' entitlement to a finding of excusable neglect.[1] The third factor in the excusable neglect analysis is "the reason for the delay, including whether it was within the reasonable control of the movant." *Bone Screw*, 246 F.3d at 323 (citing *Pioneer*, 507 U.S. at 395).

Plaintiffs' actual receipt of notice and Defendant's compliance with the notice procedure are not necessarily the lynchpin on which the excusable neglect analysis turns. In *Pioneer*, the Supreme Court explained that excusable neglect "is a somewhat 'elastic

---

[1] Defendant also contests the validity of Plaintiffs' support for their assertion that they did not receive notice, because Plaintiffs did not submit any certified statements. (ECF No. 23-1 at 10, 11). The lack of a certified statement supporting the assertions in Plaintiffs' briefing is now irrelevant as the Court is no longer considering the whereabouts of Plaintiffs in regard to whether they received notice.

5

concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." 507 U.S. at 392. The Supreme Court explicitly declined to impose a "rigid barrier against late filings attributable in any degree to the movant's negligence." *Id.* at 395 n.14; *see also In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999) (confirming that *Pioneer* does not limit excusable neglect to situations beyond the movant's control).

For example, in *In re Insurance Brokerage Antitrust Litigation*, the Court held that excusable neglect was appropriate despite the fact that two claimants "could have learned of the Settlement Agreement whether or not they received" notice. Civ. No. 04–5184 (GEB), 2009 WL 2255513, at *5 (D.N.J. July 24, 2009). Similarly, in *In re Processed Egg Products Antitrust Litigation*, the Court allowed the plaintiffs to untimely opt out of the class despite having received appropriate notice that satisfied due process. 130 F. Supp. 3d 945, 950–51, 956 (E.D. Pa. 2015). Finally, in *Bone Screw*, the Third Circuit permitted the claimant to file a late claim in the class action settlement process despite the defendant's compliance with the notice procedure approved by the Court. 246 F.3d at 318, 326–328 (noting also that the Second Circuit has found that "the plaintiffs' failure to make a timely filing for inclusion in a class action settlement was blameless, despite the fact that actual notice had been mailed to them through their broker") (citing *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972)).

While Plaintiffs' failure to check their email for notice of the final settlement weighs against a finding of excusable neglect, this factor alone is not dispositive. *See In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d at 956. It is not necessarily the case that Plaintiffs missed the relevant notices due to their carelessness, as those emails

could have gone to their spam or trash folders. Nor is Defendant being penalized for complying with the Court approved notice procedure. In light of the fact that this Court found that the other three *Pioneer* factors weighed in favor of excusable neglect in its December 13, 2017 Opinion, (ECF No. 21 at 4–6), and given the aforementioned case law showing that excusable neglect may still be appropriate despite a claimant having received notice through a Court approved notice program, the Court determines that the fact that it overlooked Plaintiffs receipt of the relevant notices via email is not enough to grant Defendant's Motion for Reconsideration.

## IV.   CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion for Reconsideration. An appropriate Order accompanies this Opinion.

DATED: ~~February~~ 3/5/, 2018

JOSE L. LINARES
Chief Judge, United States District Court